# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Dawn Hughey,

          Plaintiff,      Case No. 19-10368

v.                            Judith E. Levy
                               United States District Judge

Anthony Easlick,

                               Mag. Judge Elizabeth A.
         Defendant.     Stafford

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16], DENYING DEFENDANT'S MOTION IN LIMINE AS MOOT [23], AND DISMISSING CASE

This is an excessive force handcuffing case. Plaintiff alleges that Defendant handcuffed her during an arrest, and she sustained injuries as a result. Pending is Defendant's motion for summary judgment. (ECF No. 16.)

## I.    Factual Background

On the morning of November 4, 2016, Defendant Anthony Easlick, a Michigan State Police Trooper, stopped Plaintiff Dawn Hughey for speeding on her way to work. (ECF No. 1, PageID.3.) After the officer ran

Plaintiff's vehicle and personal information through the police database, he discovered that her vehicle was improperly registered and that there was an active warrant out for her arrest due to an unpaid ticket. At this point, Defendant asked Plaintiff if she had enough cash to post bond, and Plaintiff replied that she did not. The officer told Plaintiff that he could either take her to court so she could clear up the warrant or write her citations for the lack of insurance and invalid registration. (ECF No. 16-4, at 13:00–14:10.) Defendant informed Plaintiff that because of her invalid registration and insurance, under either scenario he could not allow her to drive her car away from the scene and would need to call a tow truck. (*Id.*)

When asked to exit the vehicle, both parties agree that Plaintiff did so without resistance. (ECF No. 1, PageID.3; ECF No 16, PageID.63; ECF No. 16-4, at 14:58–15:04.) The dashcam footage, which the undersigned has carefully reviewed, shows the top, right-side angle of Defendant handcuffing Plaintiff. (ECF No. 16-4, at 15:05–15:30.) According to Plaintiff, when Defendant placed her in handcuffs, he twisted her left arm behind her to meet her left wrist to her right wrist. It was this twisting motion that allegedly caused a rotator cuff injury to Plaintiff's

2

left shoulder.[1] Plaintiff testified that Defendant did not check to see if the handcuffs were too tight. Plaintiff also did not say anything to Defendant about the alleged twisting of her arm while she was being handcuffed.

After Plaintiff was in handcuffs, the two walked to the front of Defendant's police car and she entered front passenger seat. At some point after getting into the police car, Plaintiff began to feel the pain in her shoulder. Plaintiff testified that she told Defendant about her pain four to five times, but he did not respond to her. According to Plaintiff, she did not feel the pain until she was sitting in the car with her hands behind her back. (ECF No. 21-3, PageID.178.) Defendant's testimony is different on this point; he testified that Plaintiff told him about her left arm pain as she was getting into the police car. (ECF No. 21-2, PageID.168.) From the dashcam footage, there are ten minutes of recording between the handcuffing and when the audio cuts off. *(ECF No.

---

[1] This point is contested. Defendant's motion for summary judgment includes an independent medical evaluation of Plaintiff conducted by Dr. Jerry Matlen who concluded that Plaintiff's injury could not have resulted from the twisting of her arm as alleged. (ECF No. 16-8, PageID.123.) Instead, Dr. Matlen found that the mechanism of her injury could only have been caused by "raising one's arm above one's head." (*Id.*) Plaintiff has not produced evidence to contradict this medical opinion and therefore failed to create a question of fact regarding whether the injury could have been caused by excessive force while being handcuffed.

16-4, at 16:20–26:51.) In these ten minutes, the two talk about several different things, such as how she is upset about being late for work and possibly losing her job, which items she wants out of her car, and where her car is being towed. There are no audible portions of the recording that capture Plaintiff saying anything about her arm pain.

Later, while in the vehicle with Defendant, Plaintiff also made a statement suggesting she would harm herself. (ECF No. 21-3, PageID.179.) Because of this statement, instead of taking Plaintiff to court, Defendant took her to the hospital to have a psychiatric evaluation done. Once Plaintiff was at the hospital and in a triage room, Defendant removed Plaintiff's handcuffs. Plaintiff testified that the nurse in the room saw the marks on Plaintiff's wrists and noticed that she was unable to move her arm to her front. Plaintiff testified that the nurse then remarked "what's wrong with her arm?" to which Defendant replied it was from Plaintiff's handcuffs. (ECF No. 21-3, PageID.180.) Plaintiff left the hospital that same day, but Plaintiff testified that a later MRI of her shoulder revealed tears to the rotator cuff of her left shoulder which required two surgeries. (ECF No. 21, PageID.143.)

Plaintiff filed suit on February 6, 2019. (ECF No. 1.) Plaintiff alleges that, in carrying out the traffic stop, Defendant used excessive force and was deliberately indifferent to her serious medical needs.

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

### A. The Claims

There are three counts in Plaintiff's complaint. The first alleges that Defendant used excessive force as a violation of "her rights [and] privileges and immunities vouchsafed . . . by the Fourteenth

Amendment." (ECF No. 1, PageID.5.) The second count alleges a violation of her "right to adequate medical care under the Fourteenth Amendment's Due Process Clause," although the count is entitled "Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in Violation of the Fourteenth Amendment." (*Id.* at PageID.5–6.) The third count alleges a violation of the Fourteenth Amendment's right to bodily integrity due to the Defendant's alleged use of excessive force. (*Id.* at PageID.7.)

Unfortunately, Plaintiff's precise claims are not clear. However, the essence of Plaintiff's complaint is about excessive force due to handcuffing. Excessive force claims are normally brought under the Fourth Amendment; however, the complaint never uses the term "Fourth Amendment." Plaintiff argues in her response brief that the claim is properly analyzed under the Fourth Amendment. (ECF No. 21, PageID.148.) However, the Court cannot construe Plaintiff's claim as a Fourth Amendment claim because she never attempted to amend her complaint and a response brief cannot serve an amended complaint. *See Jocham v. Tuscola County*, 239 F.Supp.2d 714, 732 (E.D. Mich. 2003) ("the plaintiffs may not amend their complaint through a response

6

brief.") The Court also notes that Plaintiff is not pro se, which would otherwise require a liberal construction of the pleading in Plaintiffs' favor. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999).

According to Plaintiff's response brief, there are two claims against Defendant: a Fourth Amendment violation for excessive force while handcuffing and a Fourteenth Amendment violation for the Officer's deliberate indifference to her serious medical needs. (ECF No. 21, PageID.140.) Although Plaintiff's complaint did not allege a Fourth Amendment violation, the Court will analyze the complaint through that framework in the interest of judicial economy. For the reasons set forth below, Plaintiff cannot survive summary judgment.

### B. Excessive Force

Plaintiff argues that Defendant used excessive force and is not entitled to qualified immunity related to his treatment of her while she was being handcuffed. "In civil suits pursuant to 42 U.S.C. § 1983 for money damages, qualified immunity protects a public official from being sued as long as the official 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crockett v. Cumberland*, 316 F.3d 571, 579 (6th Cir. 2003) (quoting

7

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). On a summary judgment motion, the Court considers whether the facts "viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right.'" *Soloman v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Only if there is a showing of a constitutional violation must a court analyze whether the right is "clearly established." *Id.*

The Fourth Amendment guarantees citizens the right "to be free of excessive force when police make an arrest or seizure." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). Plaintiff identifies two injuries from her arrest: "ring marks on her wrists" from the handcuffs being too tight, and a torn rotator cuff from excessively forceful handcuffing. (ECF No. 21, PageID.148.) "[U]nduly tight or excessively forceful handcuffing is a clearly established violation of the Fourth Amendment." *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015).

As for Plaintiff's wrist-marks as a result of the handcuffs being too tight, to survive a motion for summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) the plaintiff complained the handcuffs were too tight; (2) the officer ignored

8

those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing. *Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015).

Defendant argues that Plaintiff has not established the third element: some physical injury resulting from the excessively tight handcuffing. There is conflicting caselaw in the Sixth Circuit regarding whether wrist-marks alone are sufficient to prove injury. *See Ouza v. City of Dearborn Heights*, No. 16-14331, 2019 WL 339616, at *8–*9 (E.D. Mich. Jan. 28, 2019) (citing and explaining some of the conflicting cases on this subject); *Compare Smith v. Athens County*, 79 F. App'x 841, 843 (6th Cir. 2003) (affirming the district court's grant of summary judgment on an excessive force claim where the record showed that the plaintiff had red marks around his wrists from handcuffs) *with Morrison v. Bd. Of Trustees of Green Twp.*, 583 F.3d 394, 402 (6th Cir. 2009) (rejecting the contention that "bruising and wrist marks alone are, as a matter of law, insufficient to establish physical injury" for a tight handcuffing claim).

Although Plaintiff claims that she had "ring marks" on her wrists as a result of the cuffs being too tight, in her deposition, Plaintiff was

9

asked if she had any wrist or hand injuries "because of the handcuffs" to which she replied, "[n]o." (ECF No. 21-3, PageID.178.) Plaintiff has also not submitted any medical evidence that the handcuffs caused any injury to her wrists. On Plaintiff's own admission, she cannot establish that she suffered injuries due to "unduly tight" handcuffs. Therefore, she cannot show a constitutional violation on her wrist-marks claim and, even if she had properly brought her claim under the Fourth Amendment, Defendant would be entitled to qualified immunity.

Plaintiff also alleges that she suffered "excessively forceful handcuffing," which resulted in a torn rotator cuff. This injury is not due to tight handcuffing, but rather the alleged force Defendant deployed while Plaintiff was being handcuffed. Plaintiff claims that her shoulder was injured when Defendant pulled on her left arm and twisted it in order to put her in handcuffs. Both parties agree that, at the time Plaintiff was being handcuffed, she did not say anything about this injury. Plaintiff said she did not feel the pain until she was in the car with her hands behind her. (ECF No. 21-3, PageID.178.) After being handcuffed and for the next ten minutes while sitting in the police car waiting for the tow truck to arrive, Plaintiff does not mention the

10

handcuffing or pain in her arm or shoulder. But Plaintiff testified that at some point on the way to the hospital, she complained four or five times that the handcuffs were too tight. She also remembered telling Defendant about her arm pain a few times in the car on the way to the hospital. (*Id.* at PageID.180.) Evidence of injury resulting from the use of force, including latent injury, may be relevant to the question of whether the force used was excessive. *Martin v. Heideman*, 106 F.3d 1308, 1311–12 (6th Cir. 1997).

Plaintiff alleges that her shoulder injury occurred due to Defendant's excessive force when he was placing her in handcuffs—by twisting her left arm behind her back to put on the handcuffs. Because she does not allege that this shoulder injury occurred from excessively tight handcuffing, the claim must be under a general excessive force framework. In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). In determining whether an officer's actions were reasonable, the specific facts of each case are key. *Id.* at 396. Although not an exhaustive list, courts should pay particular attention to "the

11

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

The question here is whether the officer's handcuffing of Plaintiff was undertaken in an objectively reasonable manner. Plaintiff was stopped by Defendant because she was speeding and was arrested following a routine traffic check when he discovered that her vehicle was improperly registered and there was an active warrant out for her arrest due to an unpaid ticket. These crimes are not severe, nor do they indicate that Plaintiff had any tendency toward violence. Plaintiff did not attempt to flee and neither did she resist arrest in any manner. Rather, Plaintiff was cooperative with Defendant. She was tearful and told Defendant about her job history, a previous employment lawsuit she had filed and

won, that she is a "helping person," and that she had hoped to work until she was 67 before retiring. (ECF No. 16-4, at 21:17–24:30.)[2]

The officer's use of force here was reasonable. Even for individuals like Plaintiff who are arrested for non-violent misdemeanors, "an officer's decision to apply handcuffs when arresting an individual is objectively reasonable." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). A reasonable jury could not find that Defendant used excessive force when handcuffing Plaintiff. Although the dashcam footage does not show the entire handcuffing because part of their bodies were out of frame, the visible portion shows nothing to suggest that the officer subjected a detainee to "gratuitous violence." *Morrison*, 583 F.3d at 407. And the audio recording for ten minutes after the handcuffing does not reveal any complaints from Plaintiff regarding the handcuffing or her arm and shoulder.

Plaintiff has brought forth no evidence that the amount of force used by Defendant was objectively unreasonable under the

---

[2] Defendant listened throughout Plaintiff's remarks, and at one point he responded that "[she] does not seem like the kind of gal who needs to sit in jail. . ." (ECF No. 16-4, at 21:30–21:47.) This leaves the Court with the impression that Officer Easlick believes that some individuals might benefit from sitting in jail, but that is an issue for another day.

13

circumstances. This case is not like *Kostrzewa v. City of Troy*, where the officers, despite plaintiff complaining that his handcuffs were too tight "allegedly amused themselves by speeding unnecessarily, braking abruptly, and driving recklessly along a winding road, so as to toss Kostrzewa around the back seat of the car and place additional pressure on his wrists." 247 F.3d 633, 640 (6th Cir. 2001). This case is also unlike *Lustig v. Mondeau*, where the Sixth Circuit found that an officer used excessive force when he handcuffed a plaintiff while raising her "arm up high, and then repeatedly jerked her arm higher in response to her yelling and protesting." 211 F. App'x 364, 371 (6th Cir. 2006); *see also Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (continued spraying of mace on incapacitated suspect); *Minchella v. Bauman*, 72 F. App'x. 405 (6th Cir.2003) (twisting arms, slamming into car, and kicking ankle in process of arrest for assault by throwing driver's license and registration at an officer).

Defendant argues that this case is controlled by the Court's decision in *Jackson v. Lubelan*, where the plaintiff alleged "an injury resulting from the awkward twisting of his wrist while he was being placed in the car." 2015 WL 8175015, at *2 (E.D. Mich. Dec. 8, 2015). The case is not

exactly analogous because Plaintiff here alleges that her injury occurred while being handcuffed instead of while being put in the car in handcuffs. Nevertheless, the case is instructive because Plaintiff testifies that, although the injury allegedly occurred while being handcuffed, she did not notice the pain until she was seated in the police car, sitting with her hands behind her back. (ECF No. 16-3, PageID.100.) As the Court said in *Jackson* "[c]ertainly, this awkward placement was used because plaintiff was handcuffed, but the tightness of the handcuffs did not have any impact on this maneuver at the time [plaintiff] was placed in the car." 2015 WL 8175015, at *2. The Sixth Circuit, in affirming the Court's excessive force holding, observed the following:

> [W]hile handcuffing someone so tightly that the handcuffs themselves cause injury is indeed a clearly established violation of the Fourth Amendment, *see Baynes*, 799 F.3d at 610–17, handcuffing someone just tightly enough that an awkward arm placement or a minor lift causes an injury is not. That is true even when the suspect complains to the officers.

*Jackson v. Lubelan*, 657 F. App'x 497, 502 (6th Cir. 2016).

Plaintiff maintains there is a difference between *Jackson* and her case because the injury occurred while being handcuffed. There is a line of caselaw from the Sixth Circuit that suggests that if police are on notice

15

that Plaintiff needs a special accommodation, then this could potentially form the basis of an excessive force claim. For example, in *Crooks* an officer "[handcuffed] a 65–year–old, arthritic woman from the back for a non-violent crime and in the face of persistent claims of pain." *Crooks v. Hamilton Cty., Ohio*, 458 F. App'x 548, 550 (6th Cir. 2012). The plaintiff in *Crooks* asked to be handcuffed in front to accommodate her arthritis, but the officer refused; evidence showed that the plaintiff suffered a broken rib and aggravated chest wall shortly after the arrest. The Sixth Circuit held that there was a genuine issue of material fact because the officer knew of the woman's injury; *see also Solovy v. Morabito*, 375 F. App'x 521, 523 (6th Cir. 2010) ("Once [plaintiff] was face down on the ground, the officer began to handcuff his left arm to his right arm, behind his back. [Plaintiff] told the officer that he had a 'bad locked shoulder,' but the officer ignored him."). But this is not what happened here. Plaintiff offers no evidence that she told Defendant she had a shoulder problem or needed the handcuffs to be placed in front to avoid injury. Moreover, Plaintiff failed to address Defendant's evidence that her torn rotator cuff could not have resulted from the handcuffing behind her back.

16

Accordingly, there was no constitutional violation and, even if Plaintiff had included Fourth Amendment allegations in her complaint, Defendant would be entitled to qualified immunity. On the evidence submitted, no reasonable juror could find that there was excessive force used during the handcuffing of Plaintiff.

### C. Fourteenth Amendment

Plaintiff's claims under the Fourteenth Amendment, to the extent she makes any, also must be dismissed. In her response brief, Plaintiff references her "Fourteenth Amendment" claim for "deliberate indifference to her serious medical needs," (ECF No. 21, PageID.140) but does not make any argument in support of such a claim. The law in the Sixth Circuit is clear that when a plaintiff fails to address a claim on summary judgment, the plaintiff is deemed to have abandoned that claim. *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly

to motion for summary judgment arguments constitutes abandonment of a claim).

Despite this, the Court has undertaken an independent inquiry into the merits of Plaintiff's claim, and concludes dismissal is warranted. Under the Fourteenth Amendment, pretrial detainees have a right to medical treatment that is analogous to the right of prisoners under the Eighth Amendment. *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir.2012). To prove a deprivation of that right, Plaintiff must show that Defendant acted with deliberate indifference to serious medical needs. *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir.2009).

A deliberate indifference claim has an objective and subjective component. The objective component considers whether the medical need at issue was "sufficiently serious." *Comstock v. McCrary*, 273 F.3d 693, 702–03 (6th Cir.2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component considers whether the official "subjectively perceived facts from which to infer substantial risk to the [detainee], that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 703 (citing *Farmer*, 511 U.S. at 837).

Plaintiff does not make any argument or cite any law in her brief as to a deliberate indifference claim. The Court does not find any evidence could support such a claim either. Defendant took Plaintiff to the hospital after she expressed intentions of self-harm, and after that, their interaction ended. As a matter of law, Defendant was not deliberately indifferent to Plaintiff's medical needs.

**Conclusion**

Defendant's motion for summary judgment (ECF No. 16) is granted and this case is dismissed. Because this case is dismissed, Defendant's motion in limine to exclude evidence at trial is also denied as moot. (ECF No. 23.)

IT IS SO ORDERED.

Dated: July 22, 2020      s/Judith E. Levy
Ann Arbor, Michigan     JUDITH E. LEVY
                                      United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 22, 2020.

                                      s/William Barkholz
                                      Case Manager